Slip Op. 19-49

## UNITED STATES COURT OF INTERNATIONAL TRADE

THE UNITED STATES,

              Plaintiff,

      v.

TITAN METALS CORPORATION,

              Defendant.

Before: Gary S. Katzmann, Judge
Court No.  13-00398

## OPINION

[Plaintiff's motion for summary judgment is granted.]

Dated: April 22, 2019

P. Davis Oliver, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for plaintiff.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director and Franklin E. White, Jr., Assistant Director.  With them on the supplemental brief dated December 17, 2018, was Joseph H. Hunt, Assistant Attorney General.

Peter J. Koenig, Squire Patton Boggs, of Washington, DC, for defendant.

        Katzmann, Judge: This case presents a "tangled web"[1] of changing stories and disputed

consequences:  an importer claims that duties are not owed because the goods fall outside the scope

of an antidumping order; then five years after the importation of the merchandise, the importer

abandons that argument and newly contends that duties are not owed because the merchandise was

"American Goods Returned" and not subject to the order.  Could it be said that the importer acted

with reasonable care in declining to indicate why merchandise plainly covered by an AD Order

---

[1] In the words of Sir Walter Scott in his poem, "Marmion": "Oh! What a tangled web we weave when first we practice to deceive!"

was duty-free?  Was the importer's dishonesty so egregious that the Government was entitled to the maximum penalty permitted by the statute authorizing penalties for false statements, acts and omissions in connection with the importation of merchandise into the United States?  Or was the importer only deserving of a lesser penalty, if any?  These questions are now before the court, in a case arising from an action by plaintiff, the United States ("the Government"), against defendant, Titan Metals Corporation ("Titan Metals"), to collect unpaid antidumping duties and a civil penalty under 19 U.S.C. § 1592 for negligent tariff misclassification.  Titan Metals is a small business based in Houston, Texas, engaged primarily in buying domestic origin forging scrap and selling it to India.  Titan Metals does not typically import goods into the United States.  At issue is its one-time importation of stainless steel flanges from India, which Titan Metals declared as free from antidumping duties on its entry summary.  The Government alleges that the merchandise was subject to antidumping duties and that Titan Metals violated 19 U.S.C. § 1592 by making materially false statements and omissions in its entry documentation.  The Government filed a motion for summary judgment in this court.  Finding no genuine issue of material fact, the court grants the Government's motion for summary judgment and orders Titan Metals to pay $146,368.64 in antidumping duties and a penalty of $141,984.98, 50% of the statutory maximum of $283,969.97.

## BACKGROUND

On February 2, 1994, the Department of Commerce ("Commerce") published its Amended Final Determination and Antidumping Duty Order on Certain Forged Stainless Steel Flanges from India ("AD Order").  59 Fed. Reg. 5994 (Dep't Commerce Feb. 2, 1994), Pl.'s App. 1; Pl.'s Statement of Undisputed Facts, ¶¶ 1 (Jan. 7, 2017), ECF No. 30 ("PSUF").  The AD Order imposed duties on certain types of stainless steel flanges from India.  AD Order; PSUF, ¶ 2.  On October

25, 2004, Titan Metals filed an entry summary with U.S. Customs and Border Protection ("CBP"),

entry number ANA/006500, for its importation of stainless steel flanges from India and indicated

that its merchandise was exempt from antidumping duties.  Pl.'s First Set of Interrogatories and

Requests for Admission (Aug. 4, 2015), Pl.'s App. 95 ("Pl.'s First Request").  Specifically, Titan

Metals identified the entry type as "01" (consumption entry) rather than "03" (antidumping entry)

and did not deposit any antidumping duties at the time of entry.  Id. at Ex. A; Decl. of Laura Webb,

¶ 7 (Nov. 6, 2017), Pl.'s App. 137 ("Laura Webb Decl.").  Titan Metals included in its entry

documents a Generalized System of Preferences Certificate of Origin containing a declaration by

the Indian exporter Rollwell Forge that the imported merchandise was produced in India, as well

as a stamp from India's Export Inspection Council attesting to the same.  Pl.'s First Request at Ex.

D.

On August 26, 2005, CBP liquidated Titan Metals' entry of the stainless steel flanges as

free of duty, but, on November 26, 2005, CBP determined that the imported merchandise was

subject to the AD Order.  Laura Webb Decl., ¶¶ 6–7.  CBP issued a pre-penalty notice to Titan

Metals in January 2006 and a notice of penalty and duty demand on May 8, 2006 for a penalty of

$292,737.28 and a demand of $146,368.64 for actual loss of revenue.  Letter from John Sanders

to Titan Metals Corporation (Jan. 12, 2006), Pl.'s App. 5; Letter from John Sanders to Lawrence

Hanson (May 8, 2006), Pl.'s App. 8.  On July 31, 2006, Titan Metals' counsel responded that the

imported items were unfinished and therefore not subject to the AD Order.  Letter from Lawrence

Hanson to John Sanders (July 31, 2006), Pl.'s App. 10.  He did not claim that the items were

American Goods Returned.[2]  Id.; Laura Webb Decl., ¶ 25.  Later, CBP asked Titan Metals' counsel

on numerous occasions to compare the imported merchandise to the scope of the AD Order, but

he did not respond.  Laura Webb Decl., ¶ 26.  Titan Metals' new counsel became involved after

the deadline for post-entry amendment had passed.  Def.'s Reply to PSUF, ¶ 69 (Mar. 15, 2018),

ECF No. 37.

On April 24, 2007, CBP's Fines, Penalties, and Forfeitures' Division ("FP&F") referred

Titan Metals' petition against the penalty and duty demand to CBP's Office of Regulations and

Rulings ("OR&R").  Memorandum from FP&F to Director (April 24, 2007), Pl.'s App. 12.  On

May 29, 2007, OR&R issued a decision finding that Titan Metals failed to exercise reasonable

care.  Letter from Charles Ressin to John Sanders (May 29, 2007), Pl.'s App. 15.

On September 11, 2009, Titan Metals asserted for the first time in a response to CBP's

amended penalty notice that the imported merchandise was American goods exported and

returned.  Letter from Peter Koenig to Commissioner (Sept. 11, 2009), Pl.'s App. 26.  After a few

---

[2] 19 C.F.R. § 10.13 defines "American Goods Returned" under the Harmonized Tariff Schedule of the United States ("HTSUS"):

> Subheading 9802.00.80, Harmonized Tariff Schedule of the United States (HTSUS), (19 U.S.C. 1202), provides that articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting, are subject to a duty upon the full value of the imported article, less the cost or, if no charge is made, the value of such products of the United States.  The rate of duty which is assessed upon the dutiable portion of the imported article is that which is applicable to the imported article as a whole under the appropriate provision of the HTSUS (19 U.S.C. 1202) for such article. If that provision requires a specific or compound rate of duty, the total duties assessed on the imported article are reduced in such proportion as the cost or value of the returned United States components which qualify for the exemption bears to the full value of the assembled article.

rescissions due to miscalculation, CBP issued its fourth and final pre-penalty notice and duty demand on November 1, 2011, demanding $146,368.64 in antidumping duties and $283,969.97 in penalties.  Letter from Celia Grau to Titan Metals (Nov. 1, 2011), Pl.'s App. 35.  In a January 6, 2012 letter to CBP in response to CBP's November 1, 2011 letter, Titan Metals reasserted that the imported merchandise was U.S. origin product mistakenly shipped to India and returned and thus was not subject to antidumping duties.  Letter from Peter Koenig to Celia Grau (Jan. 6, 2012), Pl.'s App. 41.  Titan Metals provided documentation of its purchase of forging scrap from Beaumont Iron & Metal Corp. ("Beaumont"), a Texas-based company, and its shipment of the forging scrap to Kanungo Ferromet Ltd. ("Kanungo") in India.  Letter from Peter Koenig to Celia Grau (Jan. 6, 2012).

CBP then compared the documentation of the imports into the United States and the documentation of Titan Metals' return of the erroneous shipment to Beaumont.  CBP found that the weight of the imported merchandise (35,837 lbs.) did not match the weight of the merchandise returned to Beaumont (37,346 lbs.) and that the value of the imported merchandise ($91,749) did not match the value of the merchandise returned to Beaumont ($24,275).  Letter from Peter Koenig to Celia Grau (Jan. 6, 2012), at Ex.10, Pl's App. 74; Pl.'s First Request at Ex. A.  On March 21, 2012, CBP issued another letter to Titan Metals' counsel in response to the January 6, 2012 letter, in which it stated that Titan Metals had not demonstrated that the imported merchandise was "returned exactly as is" as claimed by Titan Metals, and therefore determined that a violation occurred and that Titan Metals was culpable as alleged in the pre-penalty notice dated November 1, 2011.  Letter from Celia Grau to Peter Koenig, (Mar. 21, 2012), Pl.'s App. 89.

On April 20, 2012, Titan Metals' counsel explained in an email to Commerce that the discrepancy in value was due to the fact that Titan Metals' export to India was believed to be scrap

metal, whereas its import from India was believed to be good products (i.e., forgings).  Email Correspondence between Peter Koenig and Fletcher Benton (May 30, 2012), Pl.'s App. 90. However, the letter provided no explanation as to the discrepancy in weight.  Id.

On May 30, 2012, FP&F referred this matter to the Associate Chief Counsel in Houston for collection.  PSUF, ¶ 95.  On December 12, 2013, the Government brought an action against Titan Metals in this court, alleging that Titan Metals committed a negligent violation of 19 U.S.C. § 1592 and owed the Government $283,969.97 in penalties and $146,368.64 in antidumping duties.  Pl.'s Br. at 9.

In its September 2015 response to the Government's discovery request, Titan Metals explained the timeline of events that led it to export and import what it argued was American Goods Returned.  Def.'s Resp. to Pl.'s First Request (Sept. 2, 2015), Pl.'s App. 118.  Titan Metals contended that Beaumont erroneously shipped on May 24, 2004 what it believed to be scrap metal, which turned out to be good product (i.e., actual forgings as opposed to scrap metal from making forgings), to Titan Metals; that Beaumont asked Titan Metals to return the merchandise after realizing the mistake; and that Titan Metals subsequently asked Kanungo to return the products from India to the United States, which were the imported merchandise at issue.  Id.

On October 1, 2015, in response to Government questioning during a deposition taken for the purposes of this litigation, Titan Metals' president Mukesh Turakhia ("Turakhia") admitted that Titan Metals' statement on its entry forms indicating that the steel flanges were produced in India was false and that he knew that the statement was false at the time of forwarding the entry forms to CBP.  Deposition Transcript of Mukesh Turakhia, 177–78 (Oct. 1, 2015), Def.'s App. 1 ("Turakhia Dep. Tr.").  Turakhia further testified that Titan Metals did not review the entry forms or discuss them with its customs broker Potts, McCanless & McCanless before submitting them to

CBP.  Id. at 69–70.  Turakhia noted that Titan Metals was in the business of buying forging scrap

metal from American companies and exporting it to India and was not a repeat importer.  Turakhia

Dep. Tr. at 13.  Turakhia also acknowledged that Titan Metals did not file with CBP a declaration

by its foreign shipper, Kanungo, attesting that the articles were exported from the United States

"and returned without having been advanced in value or improved in condition by any process of

manufacture or other means," which is required for American Goods Returned to receive tax-free

treatment.  19 C.F.R. § 10.1(a)(1) (2017); Turakhia Dep. Tr. at 192.  Hitesh Kanungo, the head of

Kanungo, subsequently testified that the imported merchandise was American Goods Returned.

Deposition of Hitesh Kanungo, Kanungo Ferromet Ltd., p. 11, 18, 23–33, 38, 40, 46–47, 62–65,

67, 79–85, 99–100, 105 (Aug. 1, 2016), Def.'s App. 68 ("Kanungo Dep.").

The Government filed a motion for summary judgment on November 7, 2017, and Titan

Metals filed its response on March 15, 2018.  ECF No. 30, 37.  Oral argument was held on

November 20, 2018.  ECF No. 42.  On December 6, 2018, the court ordered supplemental briefing.

ECF No. 44.  The Government filed its supplemental brief on December 17, 2018.  ECF No. 45.

Titan Metals did not file a response.  On December 18, 2018 the court then ordered additional

supplemental briefing from both parties and for Titan Metals to include in its brief its response to

the questions issued by the court in the December 6, 2018 order.  ECF No. 46.  After a stay due to

a lapse in appropriations, the Government and Titan Metals filed their supplemental briefs on

February 6, 2019.  ECF Nos. 51–52.

## APPLICABLE LAW

### I.     Jurisdiction and Standard of Review

The court has jurisdiction over the underlying action pursuant to 28 U.S.C. § 1582(1).[3] The court decides all issues de novo in actions under section 1592. 19 U.S.C. § 1592(1).

### II.    Summary Judgment Standard

The court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  USCIT R. 56(a).  To raise a genuine issue of material fact, a party cannot rest upon "mere allegations or denials" and must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing version of the truth at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); see also USCIT R. 56(e); Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1368 (Fed. Cir. 2006).

As the Federal Circuit has emphasized, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact."  Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Rather, "the burden on the moving party may be discharged by 'showing' — that is, pointing out to the [Court] — that there is an absence of evidence to support the non-moving party's case."  Id. (quoting Celotex Corp v. Catrett, 477

---

[3] 28 U.S.C. § 1582 provides that:

> The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
> (1) to recover a civil penalty under section 592, 593A, 641(b)(6), 641(d)(2)(A), 704(i)(2), or 734(i)(2) of the Tariff Act of 1930;
> (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury; or
> (3) to recover customs duties.

U.S. 317, 325 (1986)).  Once the movant has shown that no genuine issue of material fact exists, the party opposing summary judgment must demonstrate that such genuine issue of material fact does exist.  Id. at 324.  To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record" because "mere denials or conclusory statements are insufficient."  SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985). A material fact is one that "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  "In reviewing facts, all reasonable inferences must be drawn in favor of the party opposing summary judgment."  Id. at 255.

### III.    *Antidumping Duties*

19 U.S.C. § 1673 provides that Commerce must impose antidumping duties on subject merchandise that "is being, or is likely to be, sold in the United States at less than fair value" when "an industry in the United States [] is materially injured, or [] is threatened with material injury." Commerce issues an AD Order, which defines the subject merchandise and imposes a duty rate on that subject merchandise upon importation to the United States.  19 U.S.C. § 1673.  19 C.F.R. § 10.13 provides an exception for American Goods Returned to the duty rate imposed by Commerce on subject merchandise.  Goods exported from the United States and returned in the same condition are not subject to antidumping duties.  Id.  Upon entry, an importer must declare on CBP Form 7501 whether the goods fall within category "01", a consumption entry, or category "03", an antidumping entry.  19 C.F.R. § 142.  If an importer claims its goods otherwise subject to an antidumping order are duty-free because they are American Goods Returned, the importer must meet the regulatory requirements of 19 C.F.R. § 10.1, addressed below.

### IV.    *Penalties for Negligent Tariff Misclassification*

19 U.S.C. § 1592 imposes a monetary penalty for negligent tariff misclassification.  The

Government has the burden of proof to establish the act or omission constituting the violation, and

the alleged violator shall have the burden of proof that the act or omission did not occur because

of negligence pursuant to 19 U.S.C. § 1592(e)(4).  Statutory negligence, unlike common-law

negligence, shifts the burden of persuasion to the defendant to demonstrate lack of negligence; that

is, CBP has the burden merely to show that a materially false statement or omission occurred, and

once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care

under the circumstances.  19 U.S.C. § 1592(e)(4); United States v. Ford Motor Co., 463 F.3d 1267,

1279 (Fed. Cir. 2006).  Thus, the court must decide if any genuine issue remains regarding whether

Titan Metals made false statements in its CBP filings; whether the false statements were material;

and whether Titan Metals affirmatively demonstrated reasonable care.

### DISCUSSION

Titan Metals contends that its merchandise is American Goods Returned, and thus no

antidumping duties are owed.  Titan Metals acknowledges it submitted fraudulent entry

documents, subjecting it to potential penalties, but argues that should the court decide to impose

penalties, the penalties should be below the statutory maximum because of mitigating factors.  Id.

The antidumping duties and penalties owed are addressed in turn.

### I.    *Antidumping Duties*

Titan Metals contends a genuine issue of material fact persists for the court to resolve at

trial regarding whether its imported steel flanges were subject to antidumping duties, arguing they

were instead duty-free American Goods Returned.  The court, however, finds that Titan Metals'

shipment was subject to the AD Order because (1) the AD Order definitively covered the

merchandise at issue; and (2) Titan Metals has not met the regulatory requirements for declaring

its merchandise as American Goods Returned.[4]  For these reasons, the court finds no genuine issue

of material fact left to resolve regarding duties owed and grants summary judgment for the

Government on the issue of duties owed.

### A.   Titan Metals Imported the Type of Flanges Covered by the AD Order.

In the first pre-penalty notice, issued on January 12, 2006, CBP decided and notified Titan

Metals that the merchandise was dutiable under the AD Order.  PSUF, ¶ 50.  In a letter dated May

8, 2006, CBP issued the notice of penalty and duty demand "for immediate deposit of the actual

loss of revenue due (antidumping duties) in the amount of $146,368.64," pursuant to 19 U.S.C. §

1592(d).  Letter from John Sanders to Lawrence Hanson (May 8, 2006).  CBP found that Titan

Metals' description of its merchandise, "stainless steel forgings (rough)" was "consistent with

subheading 7307.21.1000 HTSUS, 'Other, of stainless steel: Flanges: Not machined, not tooled,

and not otherwise processed after forging.'"  PSUF, ¶ 48.  Titan Metals' then-counsel responded

to CBP with a letter on July 31, 2006, in which he suggested that the imported items were

unfinished and therefore not subject to the AD Order.  Letter from Lawrence Hanson to John

---

[4]  The Government also argues that the January 6, 2012 letter submitted by Titan Metals' counsel
to CBP "fails to meet the statutory and regulatory requirements governing protests," Pl.'s Second
Suppl. Br. at 2, pursuant to 19 U.S.C. § 1514(c) and 19 C.F.R. § 174.13, and thus "CBP's decisions
regarding classification and duty rate [are] correct and conclusive," Pl.'s First Suppl. Br. at 3
(citing United States v. Khan, 41 CIT __, __, 234 F. Supp. 3d 1357, 1377 (2017)).  The
Government further contends that even if the court treats the letter as a protest, it was untimely
pursuant to 19 U.S.C. § 1514(a).  Titan Metals instead argues that the letter met the legal
requirements of a protest and was timely because the 180-day filing limit provided for in 19 U.S.C.
§ 1514(a) applies only to liquidation, which it argues is inapplicable here.  Def.'s Suppl. Br. at 1–
2.  If the court found that the 180-day limit did apply to pre-penalty and duty notices, however,
Titan Metals contends that the clock would not have begun until CBP issued a final pre-penalty
and duty notice.  Id.  Because this court finds no genuine issue of material fact that Titan Metals'
merchandise was covered by the AD Order and Titan Metals failed to meet the requirements of
establishing American Goods Returned, the court need not reach the issues of whether the protest
was invalid or untimely and what effect such a finding might have had in the instant litigation.

Sanders (July 31, 2006), Pl.'s App. 10.   OR&R rejected this argument, pointing to the plain

language of the AD Order, which covered "unfinished" flanges, and noting that Titan Metals did

not request a scope ruling.  PSUF, ¶¶ 58–59.  Thereafter, CBP on several occasions rescinded and

revised its penalty calculations, but the finding that Titan Metals' merchandise fell under the AD

Order, and thus duties were owed, remained unchanged.  Pl.'s Second Suppl. Br. at 3.

Titan Metals has since abandoned its argument that the merchandise was not subject to

antidumping duties because the AD Order did not cover unfinished flanges.   Titan Metals

acknowledged before the court that prior counsel was incorrect in asserting that the merchandise

was not covered by the AD Order.  Instead, Titan Metals has recognized that the AD Order, which

includes unfinished flanges in its description, covers unfinished flanges like those imported by

Titan Metals.[5]

The AD Order reads, "certain forged stainless steel flanges both finished and <u>not-finished</u>"

(emphasis added).   The plain language thus unambiguously covers unfinished stainless steel

flanges.  Neither party now disputes this material fact.  The court therefore concludes that the scope

of the AD Order covered the type of flanges imported by Titan Metals, with no genuine issue to

resolve regarding this material fact.

> ### B.   Titan Metals Has Not Followed the Requisite Steps to Establish that the Merchandise Was American Goods Returned.

Whether the merchandise qualifies as American Goods Returned is a question of material

fact because it is one which "might affect the outcome of the suit."  <u>Anderson</u>, 477 U.S. at 248.

---

[5]  In its supplemental brief, current counsel for Titan Metals notes, "Titan's initial [] counsel [] sa[ying] that an antidumping order that explicitly covers unfinished flanges by its terms does not [include] [sic] unfinished flanges.  Really?"  Def.'s Suppl. Br. at 2.

The classification of American Goods Returned here determines whether the merchandise is exempt from the AD Order, and thus whether duties are owed.

The Government argues that there is no genuine issue here regarding the fact that the merchandise is not American Goods Returned.  The Government contends that it has met its burden of "'showing' — that is, pointing out to the [Court] — that there is an absence of evidence to support the non-moving party's case" that the goods in question are American Goods Returned. Sweats Fashions, 833 F.2d at 1563 (quoting Celotex, 477 U.S. at 325 (1986)).  The Government argued in its motion for summary judgment that:

> Titan Metals did not assert a claim for American Goods Returned on its entry summary. See PSUF at ¶ 64. Titan Metals did not obtain a declaration from Rockwell Forge that the products at issue were exported from the United States and returned. See PSUF at ¶ 65. Titan Metals did not submit any documentation to Customs that included a statement from a U.S. manufacturer verifying that the steel flanges at issue were manufactured in the United States. See PSUF at ¶ 68. Titan Metals did not submit any post-entry amendments to Customs indicating that the steel flanges at issue are American Good Returned. See PSUF at ¶ 69.

Titan Metals responds that its goods were in fact American Goods Returned and thus exempt from duties under the AD Order.  Def.'s Suppl. Br. at 3.  Titan Metals contends that "[t]he United States fails to claim, much less demonstrate, otherwise, in all its briefing and cited authority.  All the United States said was that American Goods Returned was not requested at the time of entry, which is not dispositive." Id.  Titan Metals further notes that, "[i]ndeed, well after the Titan entry here, CBP itself explicitly requested information from Titan as to American Goods Returned, itself indicating that such information can be provided after entry." Id.

As an initial matter, Titan Metals confuses the issue.  While CBP may accept information after entry, and certainly has discretion to attempt to clarify entries made in error, of relevance here is the fact that Titan Metals still has not submitted all necessary paperwork to establish that

is products are American Goods Returned, almost fifteen years after the merchandise was imported.

The court concludes that the Government met its burden of "showing . . . an absence of evidence to support [Titan Metals's] case" that its merchandise was American Goods Returned. In fact, as the Government argues, Titan Metals' own documentation indicates that flanges were not American Goods Returned. PSUF, ¶¶ 19–41. The GSP Certificate of Origin for the steel flanges, which includes the certification stamp of India's Export Inspection Council, verifies that the steel flanges were products of India. PSUF, ¶¶ 19–23. Titan Metals' entry documentation also includes a declaration signed by Rollwell Forge, affirming that the products were made in India. PSUF, ¶ 26. The bill of lading also states that India is the country of origin. PSUF, ¶¶ 28–30. Lastly, a comparison of the documentation for Titan Metals' imports into the United States with the documentation of Titan Metals' return of the erroneous shipment to Beaumont reveals that the value and weights of the shipments did not match, a discrepancy which Titan Metals fails to sufficiently explain. Letter from Peter Koenig to Celia Grau (Jan. 6, 2012), at Ex. 9–10; Pl.'s First Request at Ex. A.

With the Government's burden met, Titan Metals "must point to an evidentiary conflict created on the record" because "mere denials or conclusory statements are insufficient." SRI Int'l, 775 F.2d at 1116. Titan Metals, however, has only presented denials and conclusory statements in its efforts to establish an evidentiary conflict. Turakhia asserted in his deposition that the goods were American Goods Returned. Turakhia Dep. Tr. at 66–67. Hitesh Kanungo, the head of Kanungo, also stated that the imported merchandise was American Goods Returned. Kanungo Dep., Def.'s Br. at p. 11, 18, 23–33, 38, 40, 46–47, 62–65, 67, 79–85, 99–100, 105.

In any event, quite apart from these "denials" and "conclusory statements," it is undisputed Titan Metals has failed to comply with the regulatory requirements of 10 C.F.R. § 10.1 for imported goods, otherwise subject to an AD Order, to receive duty-free treatment as American Goods Returned. SRI Int'l, 775 F.2d at 1116. An importer must file a declaration from the foreign shipper asserting "that to the best of [his or her] knowledge and belief the articles [t]herein specified were exported from the United States . . . and that they are returned without having been advanced in value or improved in condition by any process of manufacture or other means." 10 C.F.R. § 10.1(a)(1). The importer also must file "[a] declaration by the owner, importer, consignee, or agent having knowledge of the facts regarding the claim for free entry." 10 C.F.R. § 10.1(a)(2). "In any case in which the value of the returned articles exceeds $2,500 and the articles are not clearly marked with the name and address of the U.S. manufacturer, [CBP] may require . . . such other documentation or evidence as may be necessary to substantiate the claim for duty-free treatment." 10 C.F.R. § 10.1(b). Additional documentation CBP may require includes "a statement from the U.S. manufacturer verifying that the articles were made in the United States, or a U.S. export invoice, bill of lading or airway bill evidencing the U.S. origin of the articles and/or the reason for the exportation of the articles." Id.

Titan Metals has not presented CBP or the court with a declaration from the shipper, Rollwell Forge, verifying that the shipment contained American Goods Returned. Titan Metals, moreover, has not provided documentation from a U.S. manufacturer asserting that the flanges at issue were produced in the United States. Titan Metals does not dispute that it has not provided this documentation. Without it, Titan Metals cannot meet the bare minimum regulatory requirements to establish that its shipment was American Goods Returned. Because Titan Metals

has not provided more than "mere denials or conclusory statements," see SRI Int'l, 775 F.2d at

1116, it has failed to demonstrate that a genuine issue of material fact exists.

The proffered reasons[6] for Titan Metals' failure to provide the appropriate paperwork do

not ameliorate its failure to meet the regulatory requirements for American Goods Returned. Here,

"failure of documentation . . . was [a] basis for the decision. [CBP] chose not to classify the goods

as American Goods Returned, but rather to classify them as dutiable, because of the inadequacy

of [Titan Metals'] documentation." Prosegur, Inc. v. United States, 25 CIT 364, 140 F. Supp. 2d

1370, 1378 (2001). Titan Metals' "error was a failure to comply with 19 C.F.R. § 10.1," and thus

the presumption of correctness of the government's classification has not been overcome. Id. See

also J.F. Goldkamp & Co. v. United States, 38 Cust. Ct. 376, 384, C.D. 1890 (1957) (holding

"proof offered, in lieu of a certificate of exportation, [which] consists merely of some facts from

which an inference of support of plaintiff's position may be drawn . . . may not be accepted in lieu

of a certificate of exportation"). As there is no genuine issue of material fact remaining regarding

duties owed under the AD Order, the court finds Titan Metals liable for antidumping duties in the

amount of $146,368.64, pursuant to 19 U.S.C. § 1592(d).

---

[6] Titan Metals explained that:

> "[t]he India export and U.S. import documents had errors as to that return, apparently due to misunderstanding of Indian export law, compounded by the fact that Titan Metal[s] (not in the business of US importing) had not appreciated U.S. import law in this one-off single importation it had ever done (and forced upon it), and Indian company Rockwell had no understanding of how to return American goods, as had not experienced that (did not do, except this lone case). Plaintiff United States deposed all involved in this matter for multiple hours, including going through all the pertinent documents in the depositions. All deponents testified to the same effect, as to the above.

Def.'s Br. at 3.

## II.    Penalties Owed

Titan Metals acknowledged during oral argument that its falsification of customs documents may subject it to some penalty, and the parties dispute the amount of penalty applicable. Pursuant to 19 U.S.C. § 1592(c), the maximum allowable civil penalty for a negligent violation of 19 U.S.C. § 1592(a)(3) is "(A) the lesser of— (i) the domestic value of the merchandise, or (ii) two times the lawful duties, taxes, and fees of which the United States is or may be deprived, or (B) if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise."  Because the violation affected the assessment of duties, the Government asks the court to impose the statutory maximum allowable under 19 U.S.C. § 1592(a)(3)(A), the lesser of which is the domestic value of the merchandise, calculated at $283,969.97.  Titan Metals does not contest the methodology of the calculation but instead asks the court to impose a penalty below the statutory maximum due to mitigating factors.

### A.  Penalty Factors

The court ordinarily considers fourteen non-exclusive factors to determine the appropriate civil penalty amount for a violation of the statute prohibiting fraud, gross negligence, or negligence with respect to a tariff misclassification: (1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue doing business; (9) that the penalty not otherwise be shocking to the conscience of the court; (10) the economic benefit gained by the defendant through the violation; (11) the degree of harm to the public; (12) the value

of vindicating the agency's authority; (13) whether the party sought to be protected by the statute

has been adequately compensated for the harm; and (14) such other matters as justice may require.

United States v. Complex Machine Works Co., 23 CIT 942, 947–48, 83 F. Supp. 2d 1307, 1313–

14 (1999); 19 U.S.C. § 1592(c).   The existence of some mitigating factors does not necessarily

preclude the imposition of the maximum penalty.   See, e.g., Ford Motor Co., 463 F.3d at 1285

(rejecting the argument that three potentially mitigating factors precluded the imposition of the

maximum penalty).   The court must not presume that the maximum penalty requested by the

Government is warranted and give the Government's request special weight; instead, it must weigh

the relevant considerations de novo and make an independent determination of the amount of

penalty appropriate for the case.   United States v. Nat'l Semiconductor Corp., 547 F.3d 1364, 1370

(Fed. Cir. 2008); Ford Motor Co., 463 F.3d at 1285; Complex Mach. Works, 83 F. Supp. 2d at

1312.

     In Nat'l Semiconductor Corp., the Federal Circuit held that this court permissibly awarded

the maximum penalty after determining that at least six Complex Mach. Works factors disfavored

mitigation: (1) history of violations; (2) degree of harm to the public; (3) ability to pay; (4) effect

of penalty on defendant's ability to continue operations; (5) windfall economic benefit gained by

defendant; and (6) the party sought to be protected by the statute had been adequately compensated

for the harm.   547 F.3d at 1368–69.   Nat'l Semiconductor Corp. emphasized that, in that case, a

penalty of less than the maximum would reward the importer for its violation and held that the

"trial court's discretion permits more than simply counting the factors pointing in each direction."

Id.   The court, moreover, does not need to reserve the maximum penalty for grossly negligent

violations, and it is within the court's discretion to apply the maximum penalty to negligent

violations.   Id. at 1368.

By contrast, applying the Complex Mach. Works factors, courts have also declined to impose the statutory maximum penalty where importers committed fraud or negligence.  In United States v. Inn Foods, Inc., the Federal Circuit ruled that the court's assessment of a $7.5 million penalty for the importer's fraudulent entry of frozen vegetables that deprived the Government of import duties was justly imposed, representing only half of the value of the imported goods or half of the amount of the maximum penalty.  560 F.3d 1338, 1350 (Fed. Cir. 2009).  The court noted that the Tariff Act of 1930 set the maximum penalty at the domestic value of merchandise, but set no minimum, and that "the offense was serious and culpable, but the maximum penalty was unlikely to be necessary to deter future violations by Inn Foods."  Id.  The court considered not only aggravating factors such as the importer's lack of good faith effort to comply with the Act, knowingly fraudulent conduct that was ongoing for years, and substantial amount of duty lost, but also mitigating factors such as that the importer's actions occurred many years prior, and that the importer had corrected its past practices.  Id.  Most recently, in United States v. Deladiep, Inc., the court imposed a penalty of 20% of the maximum allowable to penalize defendants for their negligent violations of the statute and lack of cooperation at the administrative level, to deter future violations, and to reflect the magnitude of the wrongdoing.  41 CIT __, __, 255 F. Supp. 3d 1326, 1340 (2017).

### B.  Application of Penalty Factors to Titan Metals

Against the backdrop of these cases on penalty, the court accounts for both mitigating and aggravating Complex Mach. Works factors to decide whether the maximum statutory penalty is warranted.

Titan Metals argues that it has no past violations, was a one-time importer, and is a small business, and thus should not be ordered to pay more than a small penalty.  Def.'s Br. at 3.  Three

Complex Machine Works factors -- (3) the history of violations, (7) the defendant's ability to pay, and (8) the appropriateness of the penalty relative to the business size and the effect of the penalty on the business' continued operations -- weigh in favor of some mitigation of the penalty imposed. See Complex Mach. Works, 83 F. Supp. 2d at 1315.  As a small business not routinely involved in the business of importation into the United States, with no previous violations and no reported violations since the one-time infraction, Titan Metals is not a repeat player familiar with customs laws and regulations.  See Turakhia Dep. Tr. at 25, 38–39, 70–71.  The first time Titan Metals hired an import broker, moreover, was for the merchandise at issue here.  Id. at 68.  While no evidence has been presented to the court regarding Titan Metals' ability to pay, Turakhia testified in his deposition that Titan Metals had five employees in 2015, including his daughter, a secretary, an employee who manages export documentation, and another employee who manages accounts and logistics.  Id. at 25–26.  The company had three employees at its founding in 2001.  Id. at 27. Titan Metals' size, therefore, is also mitigating factor in the penalty calculation.

Turning to potentially aggravating factors, the Government argues that Titan Metals' knowingly fraudulent material statement to CBP that its merchandise was exempt from antidumping duties demonstrates bad faith and culpability, which merits the maximum penalty. Pl.'s Br. at 17.  As noted, Titan Metals' counsel has acknowledged that its president knowingly falsified CBP forms, which demonstrates bad faith and culpability.  PSUF, ¶ 72.  The court considers, under the Complex Mach. Works framework, "(2) the defendant's degree of culpability; . . . (5) the nature and circumstances of the violation at issue; [and] (6) the gravity of the violation." See Complex Mach. Works, 83 F. Supp. 2d at 1312.  It is unclear why Titan Metals would falsely claim that its merchandise was produced in India on its entry documentation if, as it now contends, it was produced in the United States and thus entitled to duty-free importation.  Titan Metals made

a false statement nonetheless.  See Turakhia Dep. Tr. at 177.  While Titan Metals was a one-time importer, even small, unsophisticated, first-time importers should understand that knowingly submitting false statements to CBP is illegal.  "[I]t is vital that the penalties imposed deter future lawbreakers from considering such actions to ensure the submission of true and accurate statements to Customs so that the agency may carry out its functions."  Complex Mach. Works, 83 F. Supp. 2d at 955 (emphasis added).  The court finds Titan Metals' falsification of CBP forms to be particularly egregious and that it weighs in favor of the maximum penalty.

The Government also argues that Titan Metals' previous counsel did not respond to the Government's multiple requests to compare the imported merchandise to the scope of the AD Order, which demonstrates Titan Metals' lack of cooperation with administrative agencies.  PSUF, 55–57.  Under Complex Mach. Works factor (1), the court should look to whether Titan Metals made a good faith effort to comply.  83 F. Supp. 2d at 1312.  The court concludes, based on CBP's many efforts to resolve this issue and Titan Metals' limited and often non-responsive communications, that Titan Metals did not make a good faith effort to comply.  See generally PSUF.

In sum, the determination of penalty here is not the product of some talismanic formulation, but of weighing factors as enunciated in the case law in the context of the particulars of the case under review.  In the end, balancing the considerations, the court determines that Complex Machine Works factors (3), (7), and (8) weigh in favor of mitigation, while (2), (5), (6), and (1) weigh against mitigation and in favor of the maximum penalty.  See 83 F. Supp. 2d at 1312.  Because Titan Metals is a one-time importer, a small business, and has no history of prior violations, but nonetheless falsified CBP documents and failed to cooperate fully with CBP, the court imposes a penalty amount of 50% of the statutory maximum.

## CONCLUSION

The court grants the Government's motion for summary judgment.   Drawing "all reasonable inferences" in favor of Titan Metals, the court nonetheless concludes that there is no genuine dispute that Titan Metals is liable for duties owed and negligently violated 19 U.S.C. § 1592, exposing it to civil penalties.   Anderson, 477 U.S. at 255.   The court holds Titan Metals is liable for duties owed under the AD Order, in the amount of $146,368.64.   The court also concludes that Titan Metals negligently violated 19 U.S.C. § 1592 by making materially false statements and omissions.   The court orders Titan Metals to pay 50% of the maximum penalty permitted under the statute, in the amount of $141,984.98.

/s/   Gary S. Katzmann
Gary S. Katzmann, Judge

Dated:  April 22, 2019
New York, New York